Versión para imprimir


EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Luis Colón Alicea y otros<br><br>    Peticionarios<br><br>        v.<br><br>Frito Lay de Puerto Rico y otros<br><br>    Recurridos<br><br>Corporación del Fondo del Seguro del Estado<br><br>    Interventor | Certiorari<br><br>2012 TSPR 115<br><br>186 DPR ____ |

Número del Caso: CC-2011-532


Fecha: 10 de julio de 2012


Tribunal de Apelaciones:

        Región Judicial de Bayamón


Abogados de la Parte Peticionaria:

        Lcdo. José M. Biaggi Junquera
        Lcdo. José M. Biaggi Landrón
        Lcdo. Guillermo Arbona Lago

Abogados de la Parte Recurrida:

        Lcdo. Vicente Santori Margarida
        Lcdo. Ramón Colón Olivo


Materia: Procedimientos Apelativos Notificación y efecto del Mandato al Tribunal revisado

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| LUIS COLÓN ALICEA Y OTROS<br><br>Peticionarios<br><br>v.<br><br>FRITO LAYS DE PUERTO RICO Y OTROS<br><br>Recurridos<br><br>CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO<br><br>Interventor | **Núm.: <u>CC-2011-0532</u>**<br><br>CONSOLIDADO CON<br><br><u>**CC-2011-0533**</u> | *Certiorari* |

Opinión del Tribunal emitida por el Juez Asociado señor FELIBERTI CINTRÓN

En San Juan, Puerto Rico, a 10 de julio de 2012.

El trayecto extenso recorrido por los dos (2) recursos de *certiorari* de epígrafe nos la oportunidad de reafirmar la importancia de que los tribunales de instancia aguarden el recibo del mandato de un tribunal apelativo luego de haber revisado un caso en apelación o luego de la expedición de un auto discrecional, antes de poder adquirir jurisdicción sobre el mismo nuevamente y continuar con los procedimientos en el caso. <u>Vaillant v. Santander</u>, 147 D.P.R. 338, 351 (1998).

Mediante Resolución emitida el 21 de octubre de 2011, le concedimos término a las partes para mostrar causa por

la cual no debíamos expedir los recursos solicitados y revocar los dictámenes en cuestión del Tribunal de Apelaciones. Luego de examinar detenidamente el trámite procesal concerniente a los recursos ante nuestra consideración y contando con la posición de las partes concernidas, nos encontramos en posición de resolver.

I

Los procedimientos en instancia comenzaron el 21 de junio de 1994 con la presentación de una Demanda en daños y perjuicios por los peticionarios, Luis Colón Alicea (señor Colón), su esposa, María N. González López y la Sociedad de Bienes Gananciales compuesta por ambos (en conjunto, los peticionarios) en contra de Frito Lays de Puerto Rico (Frito Lays) y uno de sus empleados de nombre Orlando Irizarry Rosado (en conjunto, los recurridos). También comparecieron como demandantes en dicha acción judicial los dos (2) hijos de los peticionarios.

Según surge de la Demanda, los peticionarios alegaron haber sufrido daños como consecuencia de un accidente automovilístico, cuando un conductor de Frito Lays, en funciones de su trabajo, impactó el automóvil en que viajaban los primeros. Dicho evento sucedió el 30 de junio de 1993.

La Corporación del Fondo del Seguro del Estado (FSE) intervino en los procedimientos ante el foro primario con el propósito de recuperar los gastos incurridos en el

tratamiento del señor Colón como consecuencia de los daños causados por el accidente.

Una vez finalizado el juicio en su fondo, el Tribunal de Primera Instancia concluyó, mediante Sentencia emitida el 3 de agosto de 2010 y notificada a las partes el día 18 de ese mismo mes y año, que los daños reclamados por el señor Colón en su Demanda se debían, en su mayor parte, a lesiones previamente sufridas en su lugar de trabajo y para las cuales había estado recibiendo tratamiento en el FSE. En su dictamen, el foro primario declaró *No Ha Lugar* las causas de acción del resto de los peticionarios, así como la solicitud de lucro cesante del señor Colón y lo reclamado por el FSE. No obstante, ordenó a los recurridos a pagar al señor Colón la cantidad de sesenta mil dólares ($60,000.00) por la agravación de su condición preexistente y como compensación por los daños y angustias mentales sostenidos como consecuencia del accidente.

Transcurridos varios trámites ante el foro primario, el 22 de octubre de 2010 el señor Colón y Frito Lays recurrieron, por separado, al Tribunal de Apelaciones. Los recursos instados por éstos recibieron el número **KLAN201001534** y **KLAN201001541**, respectivamente. Mediante dos (2) Sentencias emitidas el 29 de octubre de 2010, el foro apelativo intermedio concluyó que ambas apelaciones eran prematuras, puesto que el Tribunal de Primera Instancia no le notificó al FSE la Sentencia. Dictaminó que, como consecuencia de lo anterior, el término para

apelar no había comenzado a transcurrir, por lo que procedía una nueva notificación a todas las partes.

El 9 de noviembre de 2010 se notificó la Sentencia emitida en el recurso **KLAN201001541** y un día después, es decir, el 10 de noviembre de 2010 se notificó la correspondiente al recurso **KLAN201001534.**

Conforme a las Sentencias dictadas por el foro apelativo intermedio, el 23 de diciembre de 2010 el Tribunal de Primera Instancia emitió una Notificación Enmendada de la Sentencia a todas las partes. No obstante, no fue hasta el 13 de enero de 2011 que la Secretaría del foro apelativo intermedio remitió el mandato al Tribunal de Primera Instancia en el recurso **KLAN201001541** y hasta el 24 de enero de 2011 que hizo lo propio en el recurso **KLAN201001534.**[1] Lo anterior quedó evidenciado por el hecho de que no fue hasta el 8 de febrero de 2011 que el Tribunal de Primera Instancia emitió una Notificación dándose por enterado de la Sentencia dictada por el Tribunal de Apelaciones.

El 4 de enero de 2011 el FSE presentó una Moción de Reconsideración cuestionando el que no se hubiese ordenado, como parte de la Sentencia, el reembolso de los gastos incurridos por dicha entidad en el tratamiento de los daños agravados del señor Colón por motivo del accidente en cuestión.

---

[1] Como veremos más adelante, estos eventos van a ser determinantes para la solución de los recursos ante nos.

El Tribunal de Primera Instancia acogió la Moción de Reconsideración del FSE mediante Orden de 12 de enero de 2011, notificada a las partes el 21 de enero de 2011. Ordenó a los peticionarios a expresarse en torno a la misma dentro del término de quince (15) días.

Así las cosas, el 18 de enero de 2011 los recurridos sometieron su Oposición a la Moción de Reconsideración refutando los méritos de la misma. Pasados dos (2) días, el 20 de enero de 2011 éstos presentaron, además, una Moción al Amparo de la Regla 47 de Procedimiento Civil oponiéndose a la Moción de Reconsideración del FSE por habérsele notificado tardíamente.[2]

Por entender que la solicitud de reconsideración del FSE no tuvo efecto interruptor alguno, el 21 de enero de 2011 los recurridos presentaron un recurso de apelación ante el Tribunal de Apelaciones, al cual le fue asignado el Núm. **KLAN201100090.** De este modo, dio inicio el primero de dos (2) procedimientos judiciales ante el foro apelativo intermedio, que transcurrieron paralelos hasta tanto el Tribunal de Primera Instancia dispuso de la Moción de Reconsideración del FSE.

Mientras tanto, los procedimientos ante instancia continuaron su curso. Así pues, el 26 de enero de 2011 los peticionarios se allanaron a la Moción de Reconsideración del FSE.

---

[2]      Según surge del sobre timbrado sometido por los recurridos, no fue sino hasta el 13 de enero de 2011 que el FSE les notificó a éstos copia de su Moción de Reconsideración.

Debido a que la Hon. Yazmín Nadal Arroyo, quien presidió el juicio, se encontraba ausente, el Hon. Raphael G. Rojas Fernández mediante Orden de 8 de febrero de 2011, notificada el próximo día 22, le refirió a la Juez Nadal Arroyo las dos (2) objeciones sometidas por los recurridos atinentes a la solicitud de reconsideración del FSE para que las atendiera a su regreso.

De otra parte, el 25 de febrero de 2011 los peticionarios solicitaron la desestimación del recurso de apelación **KLAN201100090** presentado por los recurridos ante el Tribunal de Apelaciones. Adujeron como fundamento para ello que dicho recurso era prematuro, ya que para el momento de su presentación el foro primario aún conservaba jurisdicción sobre el caso en virtud de la Moción de Reconsideración presentada por el FSE.

El 2 de marzo de 2011, ya de regreso a sus funciones, la Juez Nadal Arroyo declaró *Ha Lugar* ambas mociones de los recurridos en las que éstos objetaron la solicitud de reconsideración del FSE. Su decisión le fue notificada a las partes el 4 de marzo de 2011.

Una vez resuelto el asunto de la reconsideración del FSE a nivel de instancia, el 31 de marzo de 2011 los peticionarios presentaron el recurso de apelación **KLAN201100409** ante el Tribunal de Apelaciones solicitando la revocación de la Sentencia emitida por el foro de

instancia.[3]   Los recurridos solicitaron la desestimación

del mencionado recurso de apelación alegando, en apoyo a

---

**3**     Incluimos el siguiente listado de las fechas relevantes a la controversia planteada, con el propósito de facilitar el análisis correspondiente:

3/ago./2010      Sentencia emitida por el Tribunal de Primera Instancia.

22/oct./2010     El señor Colón y Frito Lays recurren al tribunal apelativo intermedio (Recursos **KLAN201001534** y **KLAN201001541**, respectivamente).

29/oct./2010     Sentencias del Tribunal de Apelaciones desestimando los recursos por prematuros, por falta de notificación de la Sentencia del tribunal recurrido a la Corporación del Fondo del Seguro del Estado (FSE).

9/nov./2010      Se notifica la Sentencia del Tribunal de Apelaciones en el recurso **KLAN201001541**.

10/nov./2010     Se notifica la Sentencia del Tribunal de Apelaciones en el recurso **KLAN201001534**.

23/dic./2010     Notificación Enmendada de la Sentencia del Tribunal de Primera Instancia de 3 de agosto de 2010.

4/enero/2011     Presentación de Moción de Reconsideración por el FSE.

12/enero/2011    Orden dando término a las partes para expresarse sobre la Moción de Reconsideración presentada por el FSE.

13/enero/2011    Notificación de la Moción de Reconsideración a los recurridos.

**13/enero/2011**    **Notificación del mandato** al Tribunal de Primera Instancia en el Recurso **KLAN201001541**.

18/enero/2011    Moción de los recurridos objetando la Moción de Reconsideración en sus méritos.

20/enero/2011    Moción de los recurridos objetando la Moción de Reconsideración a base de la notificación tardía.

21/enero/2011    Notificación de Orden dando término a las partes para expresarse sobre la Moción de Reconsideración presentada por el FSE (dicha notificación fue efectuada a las 8:07 a.m.)

21/enero/2011    Presentación del recurso de apelación de los recurridos ante el Tribunal de Apelaciones - **KLAN201100090** (la misma ocurrió a la 1:50 p.m.)

**24/enero/2011**    **Notificación del mandato** al Tribunal de Primera Instancia en el Recurso **KLAN201001534**.

8/feb./2011      Tribunal de Primera Instancia emite notificación dándose por enterado de la Sentencia del 29 de octubre de 2010 del Tribunal de Apelaciones.

2/marzo/2011     Orden del Tribunal de Primera Instancia declarando *No Ha Lugar* la Moción de Reconsideración presentada por el FSE.

4/marzo/2011     Notificación de Orden denegando Moción de Reconsideración presentada por el FSE.

31/marzo/2011    Apelación presentada por los peticionarios ante el Tribunal de Apelaciones – **KLAN201100409**.

su moción, que el escrito de reconsideración sometido por el FSE ante el Tribunal de Primera Instancia no interrumpió el término para apelar debido a que su notificación fue tardía. Argumentaron, por tanto, que el recurso de apelación fue presentado fuera del término dispuesto para ello, por lo que el Tribunal de Apelaciones carecía de jurisdicción para atenderlo.

El foro apelativo intermedio evaluó las posturas de ambas partes resolviendo que, en efecto, debido a la falta de notificación oportuna de la Moción de Reconsideración interpuesta por el FSE ésta no tuvo el efecto interruptor pretendido por los peticionarios. Así pues, mediante Resolución de 15 de abril de 2011 y notificada el próximo día 29, el Tribunal de Apelaciones denegó la solicitud de desestimación presentada por los peticionarios en el recurso **KLAN201100090**.

De otra parte, y cónsono con su dictamen anterior, mediante Sentencia de 27 de mayo de 2011, el Tribunal de Apelaciones desestimó, por falta de jurisdicción, el recurso de apelación **KLAN201100409** sometido por los peticionarios por haberse presentado fuera de término.

Inconformes con tales determinaciones, el 29 de junio de 2011 los peticionarios presentaron ante este Foro dos (2) recursos de *certiorari* en los que, en esencia, argumentaron que la presentación de su recurso de apelación ante el Tribunal de Apelaciones había sido

oportuna, mientras que el recurso de apelación presentado por los recurridos había sido prematuro.

El primer recurso de *certiorari*, **CC-2011-532**, corresponde a la Sentencia desestimatoria del recurso de apelación **KLAN201100409**, en el cual éstos aducen el siguiente error:

> Erró el Honorable Tribunal de […] Apelaciones al determinar que la moción de reconsideración presentada no interrumpió el término para apelar, a pesar de que la misma fue acogida por el foro de instancia antes de que la sentencia adviniere final y firme.

Aunque por razón distinta, expedimos el auto de *certiorari* solicitado y confirmamos la Sentencia desestimatoria del Tribunal de Apelaciones objeto de dicho recurso.

De otra parte, en el recurso de *certiorari* **CC-2011-533** se cuestiona la Resolución emitida en el recurso de apelación **KLAN201100090**, mediante la cual el Tribunal de Apelaciones rechazó el argumento de que el recurso de apelación sometido por los recurridos se había presentado prematuramente. Dicha controversia se nos plantea a través del siguiente señalamiento de error:

> Erró el Honorable Tribunal de […] Apelaciones al no desestimar por prematuro el recurso de apelación al haber sido radicado mientras estaba pendiente ante el Tribunal de [Primera] Instancia la resolución de la moción de reconsideración del interventor.

Nuevamente, aunque por razón distinta, expedimos el auto de *certiorari* solicitado y revocamos la determinación

del Tribunal de Apelaciones objeto de tal recurso. Veamos.

## II

### A. Efecto de la presentación de recursos ante los tribunales apelativos

El sistema judicial de Puerto Rico constituye un solo distrito judicial para fines jurisdiccionales. Con el propósito de viabilizar el buen funcionamiento del mismo se ha delimitado la autoridad de los tribunales de resolver los casos o controversias, asignándole competencias a cada uno de los distintos niveles que componen el Tribunal General de Justicia. De ese modo, los foros de primera instancia ejercen una competencia general y los otros dos (2) estratos superiores, es decir el Tribunal de Apelaciones y este Tribunal, ejercen una competencia apelativa. J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, 2da ed., San Juan, Pubs. J.T.S., 2011, Tomo I, Pág. 268; Cosme v. Hogar Crea, 159 D.P.R. 1, 7 (2003).

Según está estructurado dicho sistema judicial, si una de las partes de un caso no está conforme con las determinaciones, ya sea del Tribunal de Primera Instancia o del Tribunal de Apelaciones, ésta tiene la oportunidad de que dicho dictamen sea revisado por el correspondiente foro de superior jerarquía. En cuanto a lo anterior, es preciso señalar que, como explicamos en detalle más

adelante, el efecto de ese recurso en la autoridad del tribunal recurrido para continuar con los procedimientos, dependerá de su naturaleza.

Dependiendo del tipo de recurso interpuesto, puede sobrevenir, ya sea la suspensión automática de los procedimientos en el tribunal inferior o éstos continuarán hasta tanto el foro en alzada determine lo contrario.

Las Reglas de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V (2010 y Supl. 2011), regulan los asuntos atinentes a los procedimientos posteriores a la sentencia. Específicamente, en su Regla 52.3 se pormenorizan las implicaciones que tiene, en los procedimientos ante el tribunal recurrido, el presentarse o expedirse un recurso por un tribunal de superior jerarquía. Dicha regla provee lo siguiente:

> (a) Una vez presentado el escrito de apelación, se suspenderán todos los procedimientos en los tribunales inferiores respecto a la sentencia o parte de ésta de la cual se apela, o las cuestiones comprendidas en ella, salvo orden en contrario, expedida por iniciativa propia o a solicitud de parte por el tribunal de apelación; pero el Tribunal de Primera Instancia podrá proseguir el pleito en cuanto a cualquier cuestión involucrada en el mismo no comprendida en la apelación. Disponiéndose, que no se suspenderán los procedimientos en el Tribunal de Primera Instancia cuando la sentencia disponga la venta de bienes susceptibles de pérdida o deterioro, en cuyo caso el Tribunal de Primera Instancia podrá ordenar que dichos bienes sean vendidos y su importe depositado hasta tanto el tribunal de apelación dicte sentencia.
>
> (b) La presentación de una solicitud de *certiorari* no suspenderá los procedimientos ante el tribunal recurrido, salvo orden en contrario,

expedida por iniciativa propia o a solicitud de parte por el tribunal de apelación. La expedición del auto de *certiorari* suspenderá los procedimientos en el tribunal recurrido, salvo que el Tribunal de Apelaciones disponga lo contrario.

(c) La presentación de una solicitud de certificación no interrumpirá los procedimientos ante el Tribunal de Apelaciones o el Tribunal de Primera Instancia, salvo que el Tribunal Supremo disponga lo contrario, por iniciativa propia o a petición de parte. En cuanto a las órdenes de entredicho provisional e *injunction*, se estará a lo dispuesto en la Regla 57.7 de este apéndice.

(d) No se suspenderán los efectos de una decisión apelada o recurrida, salvo una orden en contrario expedida por iniciativa propia o a solicitud de parte por el tribunal de apelación, que incluya cualquiera de los remedios siguientes:

(1) Una orden de *injunction*, de *mandamus* o de hacer o desistir.
(2) Una orden de pago de alimentos.
(3) Una orden sobre custodia o relaciones filiales.

32 L.P.R.A. Ap. V, R. 52.3 (2010).[4]

Por otro lado hay que observar lo preceptuado en el Reglamento del Tribunal de Apelaciones y el Reglamento de este Foro. Sobre el particular, la normativa pertinente al foro apelativo intermedio contiene varias disposiciones, dependiendo, a su vez, de si se trata de una apelación, de un *certiorari* o de un proceso civil o criminal.

En específico, la Regla 18 del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B, R. 18

---

[4]     En cuanto a los asuntos de naturaleza penal, véase la Regla 197 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 197 (Supl. 2011).

(Supl. 2011), prescribe los efectos de la presentación de una apelación en un caso civil:

> (A) *Suspensión.* — Una vez presentado el escrito de apelación, se suspenderán todos los procedimientos en el Tribunal de Primera Instancia respecto a la sentencia, o parte de la misma, de la cual se apela, o a las cuestiones comprendidas en ella, salvo orden en contrario, expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones; pero el Tribunal de Primera Instancia podrá proseguir el pleito en cuanto a cualquier cuestión no comprendida en la apelación.
>
> (B) *Cuándo no se suspenderá.* — No se suspenderán los procedimientos en el Tribunal de Primera Instancia cuando la sentencia dispusiere la venta de bienes susceptibles de pérdida o deterioro. En ese caso el Tribunal de Primera Instancia podrá ordenar que dichos bienes sean vendidos y su importe depositado hasta tanto el tribunal de apelación dicte sentencia.
>
> No se suspenderán los efectos de una decisión apelada, salvo una orden en contrario expedida por el Tribunal de Apelaciones, por iniciativa propia o a solicitud de parte, cuando ésta incluya cualesquiera de los remedios siguientes:
> > (1) Una orden de injunction, de *mandamus* o de hacer o desistir.
> > (2) Una orden de pago de alimentos.
> > (3) Una orden sobre custodia o relaciones filiales.

Íd.[5]

Cuando se trata de recursos de *certiorari*, es la Regla 35 del Reglamento del Tribunal de Apelaciones la que fija los efectos de su presentación, dependiendo de si se

---

[5] En el caso de la presentación de un recurso de apelación en un procedimiento de naturaleza penal, véase la Regla 27 del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B, R. 27 (Supl. 2011).

trata de un caso civil o de uno criminal.**6**  Dicha regla

versa de la siguiente manera:

(A)  *En casos civiles.—*

(1) La presentación de una solicitud de *certiorari* no suspenderá los procedimientos ante el Tribunal de Primera Instancia, salvo orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones. La expedición del auto de *certiorari* suspenderá los procedimientos en el Tribunal de Primera Instancia, salvo que el Tribunal de Apelaciones disponga lo contrario.

(2) Si la resolución recurrida dispusiera la venta de cosas susceptibles de pérdida o deterioro, el Tribunal de Primera Instancia podrá ordenar que se vendan las mismas y que se deposite su importe hasta que el Tribunal de Apelaciones resuelva el recurso.

(3) No se suspenderán los efectos de una decisión recurrida, salvo una orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones, que incluya cualquiera de los remedios siguientes:

(a) Una orden de *injunction*, de *mandamus* o de hacer o desistir;
(b) una orden de pago de alimentos;
(c) una orden sobre custodia o relaciones filiales.

(B) *En casos criminales.* — La presentación de una solicitud de *certiorari* para que revise una sentencia condenatoria suspenderá la ejecución de la sentencia, una vez prestada fianza, excepto cuando la sentencia recurrida disponga que la parte convicta quede en libertad a prueba, no se admita la prestación de fianza o una ley especial disponga que no se suspenderá la misma. Mientras se sustancia el recurso de *certiorari*, el tribunal sentenciador conservará

---

**6**   Véase, además, la Regla 45 del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B, R. 45 (Supl. 2011), en lo relativo a los casos originados en la Comisión Estatal de Elecciones.

> su facultad para modificar las condiciones de la libertad a prueba o para revocarla.

4 L.P.R.A. Ap. XXII-B, R. 35 (Supl. 2011).

Los efectos de la presentación o expedición de un recurso de apelación o de *certiorari* ante este Foro se encuentran igualmente establecidos en nuestro Reglamento. In re: Reglamento del Tribunal Supremo, 2011 T.S.P.R. 174, 183 D.P.R. __ (2011).

Específicamente, el inciso (C) de la Regla 17 de nuestro Reglamento atiende los aspectos relativos a la presentación de una apelación y dispone, en su parte pertinente, lo siguiente:

> (C) Efectos de la presentación del escrito de apelación
>
> La presentación del escrito de apelación ante el Tribunal suspenderá los procedimientos en los tribunales inferiores, salvo una orden en contrario expedida por este Tribunal a iniciativa propia o a solicitud de parte. Los tribunales inferiores podrán continuar la consideración de cualquier otro asunto no comprendido en la apelación.

Lo atinente a los efectos de la presentación o expedición de las peticiones de *certiorari* se encuentra, por su parte, preceptuado en los incisos (J) y (K) de la Regla 20 de nuestro Reglamento. Los mismos disponen, respectivamente, lo siguiente:

> (J) Efecto de la presentación de la solicitud de *certiorari*:
>
> (1) En casos civiles
>
> La presentación de una solicitud de *certiorari* no suspenderá los procedimientos ante el Tribunal de Apelaciones o el

Tribunal de Primera Instancia, salvo una orden en contrario expedida por el Tribunal Supremo, a iniciativa propia o a solicitud de parte.

Si la sentencia recurrida dispone la venta de bienes susceptibles de pérdida o deterioro, el Tribunal Supremo, a iniciativa propia o a solicitud de parte, podrá ordenar la suspensión de los efectos de la sentencia o la resolución.

(2) En casos criminales

La presentación de una solicitud de *certiorari* de una sentencia condenatoria suspenderá la ejecución de la sentencia una vez prestada fianza, excepto cuando la sentencia recurrida disponga que la parte convicta quede en libertad a prueba, no se admita la prestación de la fianza o una ley especial disponga que no se suspenda la misma. Mientras se perfecciona el recurso de *certiorari*, el tribunal sentenciador conservará su facultad para modificar las condiciones de la libertad a prueba o para revocarla.

(K) Expedición del auto de *certiorari*

El auto de *certiorari* se expedirá solamente por orden del Tribunal, a su discreción. La expedición del auto, tanto en casos civiles como criminales, suspenderá los procedimientos en el Tribunal de Apelaciones y el Tribunal de Primera Instancia, salvo que el Tribunal disponga lo contrario….

....

(Nota al calce omitida).

En resumidas cuentas, lo que suceda en los procedimientos, y como consecuencia en la jurisdicción del tribunal recurrido, una vez se acude en alzada, variará según el tipo de recurso instado. Es decir, dependerá de si se trata de un recurso de apelación o de *certiorari* y de la naturaleza civil o criminal de la acción. Debido a

las importantes implicaciones de índole jurisdiccional que ello conlleva, los tribunales concernidos deben estar atentos al desarrollo del caso a nivel del tribunal revisor y a la etapa procesal en la que éste se encuentra, previo a retomar acción en el mismo.

Una vez el tribunal de superior jerarquía adquiere jurisdicción sobre el asunto presentado para su revisión y emite una determinación que adviene final y firme, tienen que coincidir ciertas condiciones procesales para que el tribunal recurrido vuelva a adquirir jurisdicción sobre el caso. Nos referimos específicamente a la remisión del mandato. Veamos.

**B. Mandato**

El mandato es una figura enmarcada dentro de los procesos apelativos judiciales. Reiteradamente la hemos definido como el medio que posee un tribunal en alzada de comunicarle a un tribunal inferior qué determinación ha tomado sobre la sentencia objeto de revisión y ordenarle actuar de conformidad con la misma. Mejías Montalvo v. Carrasquillo Martínez, 2012 T.S.P.R. 62, 185 D.P.R. _____ (2012).

En nuestro ordenamiento jurídico procesal han existido un sinnúmero de disposiciones que han gobernado los asuntos atinentes al mandato judicial. Este concepto se encontraba recogido anteriormente en la Regla 54.7 de las Reglas de Procedimiento Civil de 1979, 32 L.P.R.A. Ap.

III, R. 54.7 (2001).**7** Sin embargo, en nuestro nuevo esquema procesal civil, esto es, en las Reglas de Procedimiento Civil de 2009, *supra*,**8** no se incorporó una norma equivalente.**9**

No obstante, de conformidad con la facultad que se nos reconoce en la Regla 52.1 de Procedimiento Civil de 2009, *supra*, para reglamentar el trámite de los recursos en los tribunales de apelación, la figura del mandato sí se encuentra delineada en el Reglamento del Tribunal de Apelaciones y en el Reglamento de este Tribunal. A esos efectos, la Regla 84(E) del Reglamento del Tribunal de Apelaciones establece lo siguiente:

---

**7** La Regla 54.7 de las Reglas de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III, R. 54.7 (2001), disponía:

> Transcurridos diez (10) días laborables de haberse archivado en autos la notificación de la sentencia dictada por el Tribunal de [] Apelaciones, el secretario de dicho tribunal devolverá el mandato a la sala del Tribunal de Primera Instancia que emitió la sentencia apelada o la orden o resolución recurrida, junto con todo el expediente original, cuando éste hubiere sido elevado, a menos que se haya concedido o esté pendiente de resolución una solicitud de reconsideración o a menos que el Tribunal de [] Apelaciones o el Tribunal Supremo ordenen otra cosa.

**8** Aprobadas en el año 2009 y puestas en vigor a partir del 1 de julio de 2010.

**9** Lo concerniente al mandato sí permanece preceptuado en la Regla 214 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 214 (2004), la cual postula:

> Treinta (30) días después de haberse archivado en autos la notificación de la sentencia dictada en apelación o *certiorari*, se devolverá al Tribunal de Primera Instancia todo el expediente de apelación unido al mandato, a menos que se hubiere concedido o esté pendiente de resolución una solicitud de reconsideración o una petición de *certiorari* ante el Tribunal Supremo, o a menos que de otro modo se ordenare por el Tribunal de [] Apelaciones o por el Tribunal Supremo. **Después de haberse remitido el mandato, el Tribunal de Primera Instancia librará todas las demás órdenes que sean necesarias para la ejecución de la sentencia.**

(Énfasis nuestro).

Transcurridos diez (10) días laborables de haber advenido final y firme la decisión del Tribunal de Apelaciones, el Secretario(a) enviará el mandato al Tribunal de Primera Instancia o a la agencia correspondiente, junto con todo el expediente original, cuando éste haya sido elevado.

4 L.P.R.A. Ap. XXII-B, R. 84(E) (Supl. 2011).

Nuestro Reglamento, por su parte, en la Regla 45 dispone sobre el particular lo siguiente:

(a) Diez días laborables después de la fecha en que se envió a las partes copia de la decisión del Tribunal en un caso, el Secretario o la Secretaria enviará el mandato al tribunal revisado, a no ser que se haya presentado una moción de reconsideración dentro de dicho periodo o que el Tribunal haya ordenado la retención del mandato.

(b) Toda moción de reconsideración deberá presentarse dentro del plazo jurisdiccional de diez días laborables mencionado en el inciso (a) de esta regla y no deberá exceder de diez páginas…. Si el Tribunal deniega la moción de reconsideración, el mandato se enviará cuatro días laborables después de la fecha cuando se envió a las partes la copia de la resolución, a menos que se haya presentado una segunda moción de reconsideración conforme a lo dispuesto en el inciso (c) de esta regla.

(c) …Si la segunda moción de reconsideración se deniega, el mandato se enviará al tribunal revisado el día siguiente.

(d) …

(e) En cualquier caso en que una sentencia o resolución de este Tribunal pueda ser revisada por el Tribunal Supremo de Estados Unidos de América mediante un recurso de *certiorari*, podrá retenerse, a solicitud de parte, la remisión del mandato al tribunal revisado por un término razonable. Si dentro de dicho término se archiva en la Secretaría una certificación del Secretario o Secretaria del Tribunal Supremo de

Estados Unidos de América, que acredite que la petición de *certiorari*, el expediente y el alegato han sido presentados ante dicho Tribunal, se retendrá el mandato hasta que recaiga una disposición final del recurso de *certiorari*. A la presentación de una copia de la orden del Tribunal Supremo de Estados Unidos de América en la que se deniega la expedición del auto, se remitirá inmediatamente el mandato al tribunal revisado. En la moción sobre retención del mandato, la parte promovente deberá señalar las cuestiones que se plantearán en el recurso de *certiorari*, con referencia a los hechos y las circunstancias pertinentes del caso.

El concepto del mandato cobra especial relevancia en lo concerniente a los efectos de índole jurisdiccional que pueda tener su remisión al foro de origen. Según establecido en las disposiciones legales pertinentes, una vez el tribunal en alzada emite su determinación, y la misma adviene final y firme, se enviará el mandato correspondiente al foro recurrido. Es en ese momento que el recurso que estaba ante la consideración del foro revisor concluye para todos los fines legales, por lo que se entiende que no es hasta entonces que éste pierde jurisdicción en lo concerniente al asunto.

**Once the mandate is issued, the … court's appellate jurisdiction formally ends.** The … court does have inherent power within a reasonable time to recall the mandate and cancel its effectiveness, and to restore its appellate jurisdiction, but only in very exceptional circumstances.

**Following the issuance of the appellate mandate, the [lower] court is required to take any action that is consistent with the mandate, as stated in the judgment entered in the [appellate] court, and any written opinion of [such] court.** Conversely, the [lower] court may

> not reconsider issues the parties failed to raise on appeal. It must attempt to implement the spirit of the mandate, and the court may not alter rulings impliedly made by the appellate court.

Moore's Manual: Federal Practice and Procedure, sec. 28.94[2]-28.94[3][a], Vol. 3 (Matthew Bender) (Supl. 2010) (Énfasis nuestro y notas al calce omitidas).

Sobre el particular, en Pueblo v. Pérez, 159 D.P.R. 554 (2003), reconocimos que el Tribunal de Apelaciones no puede conservar jurisdicción sobre un caso una vez ha resuelto todas las controversias ante su consideración y ha remitido el mandato al foro recurrido con instrucciones específicas de cómo actuar.

Conforme a lo anterior, el tribunal sujeto a revisión no adquiere jurisdicción nuevamente para poder continuar con los procedimientos y ejecutar los dictámenes de la sentencia en alzada, hasta tanto reciba el mandato del tribunal revisor. En otras palabras, es en virtud del mandato que le es devuelta la autoridad para actuar según lo dispuesto por el tribunal de mayor jerarquía.

En resumen, luego de paralizados los procedimientos en el foro de origen, éste pierde su facultad para atender las controversias planteadas en alzada y no vuelve a adquirir jurisdicción sobre ellas hasta tanto el tribunal revisor le remite el mandato correspondiente. Pérez, Ex parte v. Depto. de la Familia, 147 D.P.R. 556, 570 (1999).

Lo anterior tiene el efecto ineludible de que toda actuación realizada por el foro revisado, luego de que los

asuntos han quedado paralizados y previo a recibir el mandato, será completamente nula. <u>Íd.</u> Véase, además, <u>Vaillant v. Santander</u>, *supra*.

> Some time after the court of appeals has entered its judgment in a case on appeal, the court issues its mandate. The mandate is directed to the court below, which upon receipt of the mandate can take whatever further proceedings are appropriate or necessary in light of the mandate. Until the mandate issues, however, the case ordinarily remains within the jurisdiction of the court of appeals and **the [lower] court lacks power to proceed further with respect to the matters involved with the appeal.**

Wright, Miller, Cooper and Struve, <u>Federal Practice and Procedure: Jurisdiction and Related Matters 4th</u>, Sec.3987, Vol. 9A (2008) (énfasis nuestro y notas al calce omitidas).

Parte de los inconvenientes procesales y sustantivos que provoca esta separación de eventos entre la disposición en alzada y el mandamiento, se recogen, por ejemplo, en la siguiente expresión donde se ilustra el estado de derecho que se suscita durante el periodo que discurre entre ambas contingencias y el cual se designa como "limbo jurídico": "Due to the needless separation of the issuance of a decision from the issuance of the corresponding mandate, federal courts have created a type of limbo in which decisions may exist for a period of time before being given full effect and precedential value through mandate." Michael J. Stephan, Jon Reidy y Guha Krishnamurthi, <u>Closing the Gap: Post-Decision, Pre-Mandate</u>

Mootness, 7 Seton Hall Circuit Rev. 287, 288 (Spring 2011).

De este modo, podemos decir que el mandato guarda una función dual que impacta la jurisdicción del tribunal de menor jerarquía. Primeramente, le reviste nuevamente con autoridad sobre el caso, a la vez que le permite disponer de éste conforme las directrices impartidas por la resolución o sentencia concernida. "In its most indispensable form, the mandate allocates judicial authority in two different ways. First, it vests the lower court on remand with jurisdiction. Second, it gives the lower court on remand the authority to render judgment consonant with the appellate court's judgment." Jim L. Phillips III, Comment, "It Ain't over 'Til it's Over," But Will it Ever Be?: The Elusive Procedural Finality of Bell v. Thompson and an Appellate Court's Mandate, 60 Ark. L. Rev. 319, 342-343 (2007) (notas al calce omitidas).

## III

Conforme la evidencia no controvertida que consta en los autos del caso ante nos, el 29 de octubre de 2010 el foro apelativo intermedio desestimó, por prematuros, los dos (2) recursos instados el 22 de octubre de 2010 por Frito Lays y el señor Colón. La desestimación obedeció a que la notificación de la Sentencia, de la cual las partes recurrían, resultó defectuosa por no habérsele enviado al FSE, parte interventora en el pleito.

Así las cosas, el 23 de diciembre de 2010 el Tribunal de Primera Instancia le cursó la correspondiente notificación enmendada a todas las partes en el pleito.

No obstante, al así hacerlo, el foro primario no se percató de que para esa fecha el Tribunal de Apelaciones no le había remitido aún los mandatos correspondientes a las dos (2) apelaciones instadas por Frito Lays y el señor Colón. Por tanto, para todos los efectos legales, en ese momento el foro primario carecía de toda autoridad para actuar, incluyendo para emitir dicha notificación. Según relatáramos anteriormente, no fue sino hasta el **13 de enero de 2011** que el Tribunal de Apelaciones remitió el mandato en el recurso **KLAN201001541** y hasta el **24 de enero de 2011** en que hizo lo propio en el recurso **KLAN201001534**. Sin duda alguna, para el 23 de diciembre de 2010 el foro apelativo intermedio retenía la jurisdicción sobre ambos recursos.[10]

A tenor con la normativa anteriormente esbozada, fue para las fechas en que los mandatos se remitieron al Tribunal de Primera Instancia que la jurisdicción se revirtió a dicho foro. Por consiguiente, es desde ese momento que éste quedó en posición de implantar lo

---

[10] Según lo dispuesto en la Regla 52.3 de las Reglas de Procedimiento Civil de 2009, *supra*, y en la Regla 18 del Reglamento del Tribunal de Apelaciones, *supra*, una vez presentados los recursos de apelación **KLAN201001534** y **KLAN201001541**, los procedimientos en el Tribunal de Primera Instancia atinentes a la Sentencia dictada el 3 de agosto de 2010, quedaron suspendidos. En ese momento, el Tribunal de Apelaciones adquirió jurisdicción sobre los recursos y conservó la misma hasta que sus Sentencias de 29 de octubre de 2010 advinieron finales y firmes y los mandatos relativos a las mismas fueron remitidos al foro primario.

ordenado por el Tribunal de Apelaciones. Como consecuencia, la notificación de 23 de diciembre de 2010 y toda actuación posterior, ya sea del tribunal o de las partes, resultó completamente nula.

A base de lo anterior, nos es forzoso concluir que los términos para recurrir de la Sentencia de 3 de agosto de 2010 no han comenzado a decursar, dado que las dos (2) notificaciones realizadas por el foro primario en relación a la misma resultaron defectuosas. La primera, por no notificársele a una de las partes en el pleito, y la segunda por prematura al tribunal actuar sin jurisdicción para así hacerlo.

Es meritorio mencionar que, posterior a la notificación enmendada de la Sentencia se dieron una serie de eventos que incluyeron la presentación de una moción de reconsideración ante el foro primario, recursos de apelación ante el foro apelativo intermedio y los recursos de *certiorari* de epígrafe actualmente ante nuestra consideración. Lamentablemente, este extenso trámite procesal tuvo, sin lugar a dudas, la infortunada consecuencia de consumir el tiempo y los recursos de los tribunales y de permitir que las partes incurrieran en gastos, que al final del día no tendrán efecto legal alguno.

En resumidas cuentas, los eventos procesales en este recurso ponen de manifiesto la situación anómala que puede surgir cuando los tribunales recurridos actúan sin

jurisdicción, por el mero hecho de no aguardar hasta que el tribunal en alzada les remita el mandato correspondiente. Estas situaciones, lejos de promover la economía judicial y la justicia como pretende nuestro ordenamiento jurídico, provocan el congestionamiento de los tribunales con casos en los cuales el foro recurrido no tiene autoridad para intervenir y sobre los cuales cualquier dictamen emitido resultará nulo por falta de jurisdicción.

Lo anterior, queda claramente evidenciado en el caso de autos, en el cual han transcurrido en exceso de dieciocho (18) años desde que ocurrió el accidente que dio origen al litigio, las partes se han visto obligadas a involucrarse en múltiples trámites procesales y todavía no se ha logrado obtener un remedio final.

A tenor con lo anterior, decretamos que la notificación enmendada de la Sentencia del Tribunal de Primera Instancia de la cual se recurre es nula y, por consiguiente, el término para las partes apelar de la misma no ha comenzado a discurrir.

**IV**

Por todo lo que antecede, se expide el auto de *certiorari* en el recurso CC-2011-0532 y se confirma la Sentencia desestimatoria emitida por el Tribunal de Apelaciones en el recurso de apelación **KLAN201100409**

instado por los peticionarios, aunque por fundamentos distintos a los expresados por dicho foro.

Asimismo, se expide el auto de *certiorari* en el recurso CC-2011-533 y se revoca la Resolución emitida por el Tribunal de Apelaciones en el recurso **KLAN201100090**. En cambio, se desestima la apelación iniciada por los recurridos, pues dicho foro carecía de jurisdicción para atenderla.

Conforme lo antes expuesto, se devuelve el caso al Tribunal de Primera Instancia para que, luego de recibir el mandato correspondiente, la Secretaría de dicho tribunal notifique correctamente la Sentencia dictada el 3 de agosto de 2010 a todas las partes en el litigio.

Se dictará Sentencia de conformidad.


                                        ROBERTO FELIBERTI CINTRÓN
                                              Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| LUIS COLÓN ALICEA Y OTROS<br><br>Peticionarios<br><br>v.<br><br>FRITO LAYS DE PUERTO RICO Y OTROS<br><br>Recurridos<br><br>CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO<br><br>Interventor | Núm.: <u>CC-2011-0532</u><br><br>CONSOLIDADO CON<br><br><u>CC-2011-0533</u> | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 10 de julio de 2012.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se expide el auto de *certiorari* en el recurso **CC-2011-0532** y se confirma la Sentencia desestimatoria emitida por el Tribunal de Apelaciones en el recurso de apelación **KLAN201100409** instado por los peticionarios, aunque por fundamentos distintos a los expresados por dicho foro.

Asimismo, se expide el auto de *certiorari* en el recurso **CC-2011-533** y se revoca la Resolución emitida por el Tribunal de Apelaciones en el recurso **KLAN201100090**. En cambio, se desestima la apelación iniciada por los recurridos, pues dicho foro carecía de jurisdicción para atenderla.

Conforme lo antes expuesto, se devuelve el caso al Tribunal de Primera Instancia para que, luego de recibir el mandato correspondiente, la Secretaría de dicho tribunal notifique correctamente la Sentencia dictada el 3 de agosto de 2010 a todas las partes en el litigio.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez concurren con el resultado sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo